1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Larry C. Nolte,                    )    CV-07-1025-PHX-JAT
                                       )
10             Plaintiff,              )    **ORDER**
                                       )
11  vs.                                )
                                       )
12                                     )
    Michael J. Astrue,                 )
13                                     )
    Commissioner of the Social Security)
14  Administration                     )
                                       )
15             Defendant.              )
                                       )
16  _____   )

17

18          Plaintiff Larry Nolte filed this action under 42 U.S.C. § 405(g) to seek judicial review

19  of Defendant's denial of his request for Supplemental Security Income benefits under Title

20  XVI of the Social Security Act. (Doc. #1 (Compl.).)  This appeal is now before the Court on

21  the parties' cross-motions for summary judgment.  (Doc. ## 15 (Pl.'s Mot. for Summ. J.

22  "MSJ"), 21 (Def.'s Cross-Mot. for Summ. J. "X-MSJ").)  After considering the parties'

23  arguments and the evidence in the record, the Court will grant Plaintiff's Motion for

24  Summary Judgment in part and deny in part, and grant Defendant's Cross-Motion for

25  Summary Judgment in part and deny in part..

26  **I.      PROCEDURAL HISTORY**

27          On July 21, 2004, Plaintiff filed an application for Supplemental Security Income

28  benefits, alleging a disability onset date of December 31, 2003. (Record Transcript "Tr." 49-

1   51.)  Plaintiff asserts that he is disabled due to, *inter alia*, fibromyalgia, headaches, fatigue,
2   and depression.  (*Id*. at 43.)  The Social Security Administration ("SSA") denied Plaintiff's
3   application and request for reconsideration.  (*Id*. at 208-11, 222-25.)  Plaintiff timely
4   requested and received a hearing before Administrative Law Judge ("ALJ") Michael Cianci.
5   (*Id*. at 37, 233-57.)

6        On September 15, 2006, the ALJ denied Plaintiff's request for benefits, finding that,
7   despite Plaintiff's restrictions, he still retained the residual functional capacity to engage in
8   substantially gainful activity.  (*Id*. at 15-21.)  On April 11, 2007, the Appeals Council denied
9   Plaintiff's request for review and adopted the decision of the ALJ as the final decision of the
10  Commissioner.  (*Id*. at 6-9.)  Plaintiff filed this complaint on May 22, 2007 pursuant to 42
11  U.S.C. § 405(g), seeking judicial review of the ALJ's decision.  (Doc. # 1.)

12  **II.    STANDARD OF REVIEW**

13       The Court will not set aside the Commissioner's decision unless: (1) the findings of
14  fact are not supported by substantial evidence in the record, or (2) the decision is based on
15  a legal error.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  "Substantial
16  evidence means more than a mere scintilla but less than a preponderance; it is such relevant
17  evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*
18  *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Flaten v. Sec'y of Health & Human*
19  *Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) ("Substantial evidence is relevant evidence which,
20  considering the record as a whole, a reasonable person might accept as adequate to support
21  a conclusion.").  In determining whether substantial evidence supports the Commissioner's
22  decision, the court must consider the record as a whole and review evidence both supporting
23  and detracting from the decision.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
24  ALJ's role is to make credibility determinations and to resolve conflicts in medical
25  testimony.  *Andrews*, 53 F.3d at 1039.  If the evidence is susceptible to more than one
26  rational interpretation, one of which supports the ALJ's decision, then the court will uphold
27  the decision.  *Id*. at 1040.  However, if the ALJ applied improper legal standards,  the court
28  must set aside a decision even if it is supported by substantial evidence.  *See Ceguerra v.*

1   *Sec'y of Health & Human Servs.*, 993 F.2d 735, 739 (9th Cir. 1991).

2          The claimant bears the initial burden to prove that he qualifies for disability benefits

3   under the Social Security Act. *Andrews*, 53 F.3d at 1040. A claimant is disabled if he is

4   "unable to engage in any substantial gainful activity by reason of any medically determinable

5   physical or mental impairment which . . . has lasted or can be expected to last for a

6   continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

7          Pursuant to 20 C.F.R. § 416.920, the ALJ must perform a five-step analysis to

8   determine whether a claimant is disabled. The questions are posed sequentially until a

9   finding of disability is affirmatively rejected or established. An applicant establishes a prima

10  facie case of disability if he proves the first four of the following five steps: (1) applicant is

11  not currently engaged in "substantial gainful activity"; (2) applicant has a "medically severe

12  impairment or combination of impairments"; (3) applicant's impairment equals one of a

13  number of listed impairments that the Commissioner acknowledged as so severe as to

14  preclude the applicant from engaging in substantial gainful activity; (4) if the applicant's

15  impairment does not equal one of the "listed impairments," applicant is incapable of

16  performing his or her past relevant work; and (5) applicant is unable to perform other work

17  in the national economy considering his or her age, education, and work experience. *See*

18  *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. § 404.1520(b)-(f)). In

19  analyzing step five, the burden shifts to the Commissioner. "The Commissioner can meet

20  this burden through the testimony of a vocational expert or by reference to the Medical

21  Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d

22  947, 955 (9th Cir. 2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)); *see*

23  *also* 20 C.F.R. § 416.920(f). "If the Commissioner meets his burden, the claimant has failed

24  to establish disability." *Thomas*, 278 F.3d at 955.

25

26

27

28

1    **III.    FACTUAL BACKGROUND**

2        **A.    Plaintiff's Disability Claim**

3        Plaintiff claims that he has been unable to work since December 31, 2003.  (Tr. 49.)

4    He alleges that he is disabled due to fibromyalgia, depression, irritable bowel syndrome,

5    migraine headaches, fatigue, insomnia, anxiety, stress, memory loss, and concentration

6    problems.  (*Id*. at 43.)

7        **B.    Plaintiff's Background**

8        Plaintiff was born on February 12, 1973, and stands at 6 feet, 4 inches tall.  (*Id*. at 54,

9    137.)  Presently, he lives with his wife and two teenage children.  (*Id*. at 243.)  He has a high

10   school education and a certificate in auto body repair work.  (*Id*. at 111-12.)  From 1991 to

11   2003, Plaintiff worked full time running his own auto body shop.  (*Id*. at 108-09, 239.)

12   Plaintiff alleges that he sold the business in 2003 when he became sick.  (MSJ at 10.)

13       On August 9, 2006, Plaintiff testified to the ALJ regarding his allegedly disabling

14   conditions.  (Tr. 233-56.)  Plaintiff stated that as a result of  these ailments he is unable to

15   work due to excessive fatigue and pain.  (*Id*. at 239-40.)  Plaintiff further testified that he

16   cannot stand much longer than 20-30 minutes at a time, walk longer than 15 minutes, or sit

17   for more than 25 minutes without standing up or lying down.  (*Id*. at 241.)  Additionally, he

18   indicated that he may be able to lift 20 pounds at the most, but he would be unable to carry

19   this weight across the kitchen.  (*Id.* at 241-42.)  Plaintiff also visits his mother, occasionally

20   shops with his wife, fixes simple meals, performs some light household chores.  (*Id.* at 242-

21   45.)  He has also traveled outside Arizona twice since 2003, once to California and once to

22   New Jersey.  (*Id*. at 250.)  Plaintiff attempts to use a treadmill everyday, though the duration

23   and intensity of this activity is unclear.  (*Id*. at 251.)

24       **C.    Record Evidence**

25           **1.    Physical and Mental Impairments**

26       In 2003, Plaintiff began to be treated for severe pain by his treating physician, Dr.

27   Pena.  (*Id*. at 166.)  In November of that year, Dr. Pena concluded that Plaintiff was unable

28   to work due to fibromyaliga and depression.  (*Id*. at 168.)  In March of 2004, Plaintiff was

treated in the emergency room of the Mayo Clinic for body aches and pains.  (*Id*. at 141.)
He received multiple medical tests, all of which came back normal.  (*Id*.)  His discharge
diagnosis was "myalgias of undetermined etiology."  (*Id*.)  Shortly thereafter, Plaintiff
established care at the Mayo Clinic.  (*Id*. at 136-38.)  His pain was treated with Duragesic
patches; however, he experienced adverse side effects to them.  (*Id*. at 129, 138.)

In early 2004, Plaintiff was also treated for insomnia, weight loss, depression, and
headaches.  (*Id*. at 124-26.)  He was prescribed Lexapro for his depression and Trazadone
and Flexeril for his insomnia.  (*Id*.)  On April 20, 2004, Plaintiff was referred to a
rheumatologist specializing in fibromyaliga.  (*Id*. at 158-60.)  The treating rheumatologist
adjusted his medications and recommended physical therapy.  (*Id*.)  The reports were sent
to Dr. Pena, and it appears that Plaintiff followed up with Dr. Pena rather than the
rheumatologist.  The Mayo Clinic noted that Plaintiff appeared to be gaining his weight back,
and the antidepressants seemed to be effective.[1]  (*Id*. at 120-22.)

In January of 2005, Dr. Pena assessed Plaintiff's ability to do work-related physical
activities.  (*Id*. at 183-84.)  He concluded that Plaintiff is able to sit, stand, or walk for less
than an hour each in an eight hour work day.  (*Id*. at 183.)  He also claimed that Plaintiff
could not lift or carry more than 10 pounds, and that Plaintiff could not repetitively use is left
foot or left hand at all.  (*Id*.)  Dr. Pena also stated that Plaintiff could not ever bend, crawl,
climb, reach, stoop, balance, crouch, or kneel in a work setting.  (*Id*.)

### 2.    Vocational Expert

The Vocational Expert ("VE") testified regarding past work history and potential for
future employment.  (*Id*. at 253-56.)  The ALJ first presented the VE with a hypothetical

---

[1]While Plaintiff alleges that his depression should be considered in the evaluation of
his disability (Pl.'s Statement of Facts p. 3), Plaintiff did not provide the requested
information to the government's reviewing psychologist. (Tr. 169-82.)  Since the evidence
presented indicates that Plaintiff's treatment appears to have resolved his depression, and
because Plaintiff did not provide the requested information to the SSA, the ALJ properly
determined in Step 2 of his analysis that Plaintiff's depression was not to be taken into
account in the disability evaluation.  (*Id*. at 16.)

person with the same age, work experience, and educational background as the claimant, with the ability to do work of light exertional level with occasional bending, crouching, crawling, kneeling, and climbing.  (*Id.* at 253.)  The VE stated that this person would be precluded from performing Plaintiff's past work history, but that this person would be able to get a job as a shop estimator or a parking lot attendant.  (*Id.* at 253-54.)

The VE classified the shop estimator job as light and semi-skilled employment.  (*Id.* at 253.)  He estimated that there were 200,000 such jobs nationally and 1,800 in Maricopa County.  The VE classified a parking lot attendant as a light, sedentary, and unskilled type of employment.  (*Id.* at 254.)  The VE stated that there are 500 of these positions in Maricopa County, and 31,000 nationwide.  (*Id.*)

The ALJ's second hypothetical presented the same person who would miss four or more days at work per month and not complete assigned tasks in an eight-hour day due to fatigue, pain, or other factors four or more days per month.  (*Id.* at 254.)  The VE opined that this person would be unable to work without special accommodation.  (*Id.*)  Upon examination by Plaintiff's attorney, the VE stated that, if Plaintiff's testimony were true, Plaintiff would not be able to perform any job.  (*Id.*)  The VE also confirmed that someone with the limitations presented in Dr. Pena's assessment of Plaintiff would similarly not be able to perform work.  (*Id.* at 255.)

**IV.    THE ALJ'S DECISION**

The ALJ evaluated Plaintiff's alleged disability according to the five-step evaluation process set forth in 20 C.F.R. § 416.920.  (*Id.* at 15-21.) The ALJ first determined that Plaintiff has not been gainfully employed since the alleged onset date.  (*Id.* at 15.)  Next, the ALJ found that Plaintiff's fibromyalgia and sleeping disorder were "severe" within the meaning of 20 C.F.R. § 416.920(b).[2]  (*Id.* at 16.)  However, the ALJ concluded that

---

[2]According to 20 C.F.R. § 416.920(c), if a claimant does not have "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities, [the SSA] will find that [he] do[es] not have a severe impairment and [is], therefore, not disabled."

Plaintiff's impairments failed to meet the criteria of the third step. (*Id.*)  This step requires a claimant's impairment(s) to "meet[] or equal[] one of [the SSA's] listings in appendix 1 to subpart P of part 404 of this chapter and meet[] the duration requirement . . . ."  20 C.F.R. § 416.920(a)(4)(iii).  Specifically, the ALJ stated that Plaintiff "does not have an impairment or combination of impairments that meets or equals a listed impairment."  (*Id.*)

Finally, the ALJ examined whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work in the economy. (*Id*. at 19-20.)  The RFC is defined as "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. § 416.945.  Before determining the RFC, the ALJ first dismissed Plaintiff's testimony and the opinion of the treating physician, finding that they lacked credibility and were inconsistent with the record.  (*Id*. at 17-19.)  The ALJ determined that Plaintiff was capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently, that he could sit for 6 hours out of an 8 hour work day, and that he could stand/walk for a total of 6 hours in an 8 hour day. (*Id*. at 20.) The ALJ stated that Plaintiff could engage in only occasional climbing, bending, crouching, crawling, and kneeling.  (*Id*.)

Based on the RFC and the testimony of the VE, the ALJ found that although Plaintiff is incapable of performing his past work, he is capable of performing work as a parking lot attendant.  (*Id*. at 21.)  The number of such positions available in Maricopa County is significant.  (*Id*.)  Accordingly, the ALJ held that Plaintiff was not eligible for payments under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  (*Id*.)

**V.    DISCUSSION**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is founded on multiple errors of law. (MSJ at 2.)  Specifically, Plaintiff asserts that the ALJ committed reversible error by: (1) improperly rejecting the opinion of Plaintiff's treating physician; (2) improperly rejecting Plaintiff's subjective testimony; and (3) failing to

consider the statements of Plaintiff's wife.[3]  Each of these points will be discussed in turn.

### A.    Treating Physician Opinion

The ALJ rejected the evaluation of Plaintiff's treating physician despite the fact that it was not technically contradicted by any other medical opinion.  "Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons."  *Thomas*, 278 F.3d at 956-57.  Thus, the ALJ was required to articulate clear and convincing reasons for his decision to reject Dr. Pena's evaluation.

Dr. Pena stated in his opinion that Plaintiff cannot use his left foot repetitively, reach, crouch, or kneel "at all."  He also claims that Plaintiff cannot sit, stand, or walk for more than an hour, and that Plaintiff cannot lift more than 10 pounds.  In contrast, Plaintiff admits that he attempts to use a treadmill every day, and that he is able to lift 20 pounds.  Plaintiff also admits that he has traveled across the country and to California since the alleged onset of his disability.  While these admissions are perhaps not inconsistent with only occasionally using a foot repetitively,  reaching, crouching, or kneeling, it is difficult to believe that Plaintiff can use a treadmill[4] yet be unable to repetitively use his left foot "at all."  Further, it seems highly

---

[3]Plaintiff also asserts in his Statement of Facts that "the ALJ's assessed residual functional capacity is not supported by any substantial evidence."  (Pl.'s Statement of Facts at 2).  However, this assertion was not raised in Plaintiff's Motion for Summary Judgment. Because Plaintiff failed to properly raise and brief this issue in its motion, the Court will not address it on this appeal. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (requiring district court to resolve issues outside of the motions would be unfair to other litigants who would otherwise have that judicial time, and would be unfair to the opposing party who does not have a fair opportunity to address the matter, and therefore the court should not become a lawyer for the parties involved).

[4]Plaintiff asserts that the ALJ has put Plaintiff in a "Catch-22" regarding Plaintiff's treadmill usage: if he uses the treadmill he is physically active and therefore not disabled, but if he does not use the treadmill then he is not compliant with the medical recommendations for physical activity and this decreases his credibility.  However, this is not a true "Catch-22."  A Catch-22 is a false dilemma in which no real choice exists.  Here, while *Plaintiff* may not have a choice as to his diagnosis, this choice was never his to make.  The determination of Plaintiff's abilities is made by medical professionals, and it is here that the choice exists. It is they, and not Plaintiff, who determine if Plaintiff's restrictions make him unable to engage in physical exercise.  If they reach the conclusion that Plaintiff is unable to exercise,

unlikely that one could travel by plane and never need to bend or reach at any point during the journey (unless the person is wheelchair bound, which Plaintiff is not).  It seems even more unlikely that someone who stands at 6 feet, 4 inches tall would never have such a need. These are clear, convincing, and specific reasons for rejecting Dr. Pena's evaluation as to the extent of Plaintiff's restrictions.

**B.     Plaintiff's Subjective Testimony**

Similarly, Plaintiff claims that his pain prevents him from walking longer than 15 minutes, standing longer than 20-30 minutes, and sitting longer than 25 minutes.  (Tr. 241.) In deciding whether to accept subjective complaints, the ALJ must perform the analysis adopted in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), as a threshold matter.  *Smolen*, 80 F.3d at 1281.  If the claimant produces evidence to satisfy the *Cotton* test, the ALJ can reject the claimant's testimony on severity of symptoms only by giving "specific, clear and convincing reasons for doing so."  *Id*.

Even assuming that Plaintiff provided sufficient evidence to satisfy the *Cotton* test, the ALJ still provided "specific, clear and convincing reasons" for rejecting the testimony. It would seem nearly impossible for someone to travel across the country, yet not be able to sit for longer than 25 minutes.  Although there is no evidence as to the duration or intensity of Plaintiff's treadmill endeavors, the ALJ would not be unreasonable in assuming that attempted daily usage was inconsistent with only being able to walk for 15 minutes.  These inconsistencies demonstrate that, at the very least, Plaintiff's testimony exaggerated his symptoms.   Therefore there are specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony.

---

then they can easily make the recommendation that he not exercise.  However, if Plaintiff's doctors do decide that he has the ability to exercise, then they can recommend that he do so. Plaintiff may disagree with this diagnosis; however, the fact that Plaintiff's doctors made this recommendation is valid evidence of their evaluation of his abilities.  Therefore the ALJ can properly consider this evidence in his determination.  If Plaintiff does not comply with the doctors' recommendations, the ALJ can then determine as the finder of fact if this is due to lack of ability or lack of effort when considering the record as a whole (including the doctors' determinations of his abilities).

1

### C.     Third Party Statements

2      The ALJ failed to address the statements produced by Plaintiff's wife in his opinion.

3   "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony

4   favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

5   confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

6   reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d

7   1050, 1056 (9th Cir. 2006).  This quote from the majority opinion is best interpreted when

8   contrasted with the dissent's opinion that the omission should be harmless error when "all

9   the evidence as a whole overwhelmingly supports denial of [the] application."  *Id*. at 1057.

10      Here, Plaintiff's wife testified that Plaintiff will sometimes try to perform small

11   household chores, but when he does he usually hurts too badly the next day to the point

12   "where he can't do anything."  (Tr. 61.)  She also claims that he only sleeps 1-3 hours per

13   night, and that he is unable to pursue his former hobbies and interests.  (*Id*. at 62, 65.)  Since

14   a reasonable ALJ upon crediting this testimony could have arrived at a different disability

15   determination than what was arrived at by the ALJ here, the failure to address this testimony

16   is reversible error.

17

### D.     Remand

18      According to the Ninth Circuit, evidence should be credited and an action remanded

19   for the immediate award of benefits when the following three factors are satisfied: (1) the

20   ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) there are no

21   outstanding issues that must be resolved before a determination of disability can be made;

22   and (3) it is clear from the record that the ALJ would be required to find the claimant

23   disabled were such evidence credited. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)

24   (quoting *Smolen*, 80 F.3d at 1292).

25      Here, it is not clear that the ALJ would be absolutely required to find the claimant

26   disabled were the testimony of Plaintiff's wife credited.  While Plaintiff would theoretically

27   not be able to perform tasks or chores requiring manual labor because he would be too sore

28   to function the next day, this does not necessarily foreclose the possibility of Plaintiff

performing a largely sedentary job.  Further, despite Plaintiff's lack of sleep, it could still be possible for him to function with naps after work and appropriate breaks during the day.  While such a finding may be unlikely, the Court cannot say that the alternative finding would be required as a matter of law.  Therefore this case is remanded to the ALJ for further development of the record.

**VI.    CONCLUSION**

The Court finds that the ALJ did commit legal error in failing to consider the lay testimony of Plaintiff's wife.  Because a reasonable ALJ could (but would not be required to) find Plaintiff disabled on the basis of this testimony, this case is remanded for further development of the record.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion Summary Judgment (Doc. #15) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's Motion is **GRANTED** regarding Plaintiff's request to remand.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. #21) is **GRANTED IN PART AND DENIED IN PART**.  Defendant's Cross-Motion is **GRANTED** regarding Defendant's request to deny an immediate award of benefits.

DATED this 26th day of June, 2008.

_____
James A. Teilborg
United States District Judge

- 11 -